[Opinion delivered March 13, 1886.]

20   599
28   291
20   599
36   142

[No. 2052.]

HARRISON BRANCH v. THE STATE.

THEFT — PRACTICE — FORMER JEOPARDY — CASE STATED.— The defendant being arraigned in a court of competent jurisdiction, before a jury properly impaneled and sworn, pleaded not guilty to an indictment charging him with the theft of a horse, the property of *Fabian* Flores.   Upon the discovery that the given name of the owner was incorrectly alleged, the State entered a *nolle prosequi*, and afterwards arraigned the defendant, for the same offense, upon an indictment properly averring the name of the owner. The defendant interposed the plea of former jeopardy, setting up his arraignment on the prior indictment, which plea was supported by the facts above set out.   *Held*, that the plea of former jeopardy was not well taken.

APPEAL from the District Court of Nueces.   Tried below before the Hon. J. C. Russell.

The conviction in this case was for the theft of a horse, the property of Antonio Flores, in Nueces county, Texas, on the 10th day of

March, 1885. A term of five years in the penitentiary was the penalty assessed against the appellant.

Antonio Flores, the first witness for the State, testified that he lived in Corpus Christi, Texas. At or about the time alleged in the indictment, between 11 and 12 o'clock at night, the witness's sorrel mare was stolen from the place where she was tied with a rope, near the window of the witness's house. Eight days later, the animal was returned to the witness by his son, Fabian Flores, who went in search of her. She was taken without witness's consent.

Fabian Flores testified, for the State, that on the day after the mare was stolen from his father, he borrowed a horse and rode about the several ranches in the county, hunting her. About eight days after she was taken witness found her in a pasture, where a man named Fountain Thompson told him she would be found. He found the mare tied to a bunch of bushes about two hundred yards distant from Thompson's house, at a point indicated by Thompson's wife. Witness, with Thompson's permission, took the mare home, and delivered her to his father. Witness did not see the defendant at that time, but afterwards met him in town and asked him if he knew the mare, and he said that he did not.

Cross-examined, witness said that he testified in this case at the last term of court, and stated in substance what he has stated on this trial. He said then that the mare was taken from his house, which was substantially true, as he lived at and called his father's house his house. He said then as now that he used the mare about as much as any one else of his father's family; that his father owned the animal, but witness could have sold her if opportunity had offered.

Fountain Thompson testified, for the State, that a day or two after the alleged theft, Isaiah Clayton piloted him to a point in the brush where a sorrel mare was tied. That point was in a field about half way between the houses of Clayton and the defendant. The witness became confident that the animal had been stolen and determined to keep a watch over her on that night. Witness sent word to town about the presence of the mare in the brush under suspicious circumstances, and he watched that night, but no one came near her. On the next morning witness took the mare from where she was tied, and tied her near Clayton's gate. On Tuesday Fabian Flores came to witness's place, inquiring for the mare, and identified her as the animal he was hunting, and took her back to town. Witness did not know whether or not she was moved from near Clayton's gate before Fabian Flores came. A bridle was found near the bush to which the mare was tied.

Isaiah Clayton testified, for the State, that on a Monday in March, 1885, he discovered a mare tied in the brush between his house and the house of the defendant. He had heard of the recent theft of a horse at a fandango, and sent word to the man from whom it was stolen to come and look at the animal. The man came, but said that the animal was not his. Witness took Fountain Thompson to see the mare. They concluded that she had been stolen, and moved her to a point near witness's gate, whence on the next morning she was taken by some one and tied at the same place where witness found her. Witness and defendant were together on the day that the mare was taken back to town, and passed Fabian Flores as he was going back to town with her. After passing, the defendant rode back, looked at the animal, returned to witness, and said: "That is not the animal I had in the field. I don't know and never saw that animal." The place where witness found the mare tied was in a field between witness's place and Mrs. Branch's place. Mrs. Branch was the defendant's mother.

Mrs. Clayton testified, for the State, that on Monday morning she saw a sorrel mare tied near her husband's gate. Some time after the witness first observed her, the defendant came to the house asking for his mare. Witness pointed out the mare tied near the gate, and asked defendant if that was his mare. He made no direct answer, but left, going towards the mare, and witness resumed her household duties. When the witness looked towards the gate some time later, the mare was gone. Witness did not know who took the animal away. When witness's husband returned, he asked who had taken the mare away, and witness told him what she has here stated.

John Kelly testified, for the State, that he was engaged during March, 1885, repairing Mrs. Branch's house. Between 10 and 11 o'clock on one Monday morning the defendant, in the course of a conversation with the witness, said: "I am sore and stiff. I rode a mare out of town last night, bare back. She threw me on the way and I fell on my head." On the next (Tuesday) morning defendant said to witness: "I had a mare tied out there in the brush, and somebody has moved her." He borrowed a horse from Mr. Carson and rode off to look for his mare, and presently returned and said that he had found her. He said: "She had been moved and tied up there near Isaiah Clayton's gate. I know it is nobody else but that big-bellied Thompson who has been fooling with my mare." In the conversation which ensued between witness, defendant and Kit Carson, defendant said that the mare was an animal

which a Mexican had loaned him to ride to a distant ranche, with the option of buying her. He said that he had been keeping her in Mrs. Avery's pasture, and he described her as a sorrel animal. On Wednesday he said that he had put the mare in his brother's *remuda* (herd).

Frances Avery testified, for the State, that one night, about a week before Fabian Flores came to the neighborhood hunting his stolen animal, the defendant put a mare in witness's pasture. He arrived at the pasture at night, riding a horse and leading the mare in question. On Sunday afternoon defendant got the mare, saying that he was going to work for Captain Kennedy. He led her off with a rope, walking himself. Two or three days later witness heard of the animal discovered in the bushes by Thompson and Clayton. The State closed.

The defense introduced in evidence the previous indictment charging the defendant with the theft of this horse from Fabian Flores, who was alleged as the owner; the records of the court showing the arraignment of the defendant at the prior term of the court, upon the same, before a jury legally impaneled and sworn, and the entry of a *nolle prosequi* by the court upon the motion of the county attorney suggesting a defect in the indictment.

The motion for new trial raised the question discussed in the opinion.

No brief for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

Hurt, Judge. But one question is deemed of sufficient importance for notice.

Appellant was indicted for the theft of a certain horse, alleged to have belonged to *Fabian* Flores. That said horse was taken from the possession of, and was the property of, said Fabian Flores. Upon this indictment he was placed upon trial, that is, the jury were sworn and defendant pleaded to the indictment, before a court of competent jurisdiction. Upon discovering that Flores's given name was not Fabian, the district attorney entered a *nolle prosequi*.

Subsequently appellant was indicted for the theft of the same horse, it being alleged in said last indictment that the horse was taken from the possession and was the property of *Antonio* Flores. When placed upon trial upon this second indictment, defendant pleaded jeopardy, which plea was supported by the facts *supra*.

Under the above facts, was the plea good? We must answer this question in the negative. (Bish. Cr. Law, vol. 1, 1020, 1021, 1027, 1049, 1051, 1052; *Pennsylvania* v. *Huffman*, Addison, 140; *Comm.* v. *Mortimer*, 2 Va. Cas., 325; *Hite* v. *The State*, 9 Yerger, 357; *People* v. *Warren*, 1 Parker, 338; *People* v. *Allen*, id., 445.)

The judgment is affirmed.

*Affirmed.*